ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI-DJ2025-063A

| | | |
|---|---|---|
| **LOURDES PRIETO RIVERA**<br><br>Recurrente<br><br>v.<br><br>**DEPARTAMENTO DE LA VIVIENDA**<br><br>Recurrido | TA2026RA00185 | **REVISIÓN** procedente del **Departamento de la Vivienda**<br><br>Adm. Núm.:<br>**AR-23-00371**<br><br>Sobre:<br>Revisión Administrativa<br>(PR-HBA-37514) |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Boria Vizcarrondo, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 29 de mayo de 2026.

Comparece ante nos, en forma *pauperis* y por derecho propio[1], la señora Lourdes Prieto Rivera. (Sra. Prieto Rivera o recurrente), mediante el presente recurso de revisión judicial, y nos solicita que revoquemos una *Resolución Final y Orden* emitida por el Departamento de la Vivienda de Puerto Rico (Departamento de la Vivienda o parte recurrida) el 16 de marzo de 2026 y notificada el día siguiente.[2] Mediante el referido dictamen, el Departamento de la Vivienda sostuvo la determinación de inelegibilidad impuesta por la Autoridad para el Financiamiento de la Vivienda de Puerto Rico (AFV) como administrador del Programa de Asistencia Directa al Comprador (Programa). En su consecuencia, declaró No Ha Lugar el recurso de Revisión Administrativa y ordenó su archivo con perjuicio.

---

[1] Se autoriza su comparecencia en forma *pauperis* y por derecho propio.

[2] Sistema Unificado de Manejo y Administración de Casos (SUMAC) del Tribunal de Apelaciones (TA), Entrada Núm. 1, Anejo 2. Notificada y archivada en autos el 14 de abril de 2026.

Por los fundamentos que expondremos a continuación, confirmamos la determinación recurrida.

**I.**

En el caso de autos, la recurrente solicitó la asistencia de subvenciones federales para la adquisición de una propiedad residencial bajo el Programa de Asistencia Directa al Comprador. A esos fines, el 6 de octubre de 2023, la AFV le remitió una misiva a la Sra. Prieto Rivera en la que adjudicó favorablemente su elegibilidad para recibir asistencia financiera a base de la información provista, incluyendo a su hijo como único miembro del hogar.

Posteriormente, la recurrente notificó a la AFV sobre cambios en su composición familiar. Indicó que, residiría en la propiedad a ser adquirida, junto a su hijo y su madre, la señora Cándida Rivera Rivera (Sra. Rivera Rivera).

En consecuencia, el 7 de diciembre de 2023 la AFV remitió una segunda notificación de elegibilidad en la que declaró a la Sra. Prieto Rivera inelegible para recibir asistencia económica, según solicitado. En su dictamen, indicó que no cualificaba con el requisito de "Comprador de Vivienda Cualificada", según definido en las Guías del Programa.

Inconforme, la recurrente instó una petición de reconsideración ante la AFV. En su escrito, manifestó su intención de excluir a su madre la Sra. Rivera Rivera de su núcleo familiar debido a que su hermano, el señor José Prieto, se encargaría de su cuidado.

Cónsono con la anterior, el 22 de enero de 2024 el Departamento de la Vivienda notificó a la recurrente del requisito de disponer de documentos adicionales para su evaluación. En particular, solicitó tres (3) declaraciones juradas a ser suscritas por

la recurrente, el señor José Prieto y la Sra. Rivera Rivera, con el fin de certificar los cambios en la composición familiar.

Pendiente lo antes, el 12 de marzo de 2024 el Oficial Examinador emitió *Orden.*[3] En suma, hizo constar que la parte recurrida refirió el caso de autos a su atención para disponer del asunto mediante revisión administrativa bajo el alfanumérico AR-23-00371.

Así las cosas, el Departamento de la Vivienda presentó una *Moción de Desestimación* por dejar de exponer una causa de acción que justifique la concesión de un remedio.[4] Argumentó que la Sra. Rivera Rivera era titular de la propiedad inmueble a ser parcialmente subsidiada con fondos federales. Añadió, que las Guías del Programa expresamente prohíben que los miembros del hogar sean dueños de una propiedad residencial. Por consiguiente, concluyó que la recurrente no cumplía con el criterio de elegibilidad de "comprador de vivienda elegible". A esos fines, suplicó la desestimación del recurso de revisión administrativa.

En reacción, la recurrente instó la *Contestación a Moción de Desestimación.*[5] Allí sostuvo que las circunstancias particulares de su caso requerían considerar la situación de salud de su madre por tratarse de una persona mayor con exigencias continuas de cuidado. Asimismo, señaló faltas en el debido proceso de la ley, ante la dilación de disponer sobre el petitorio de reconsideración en incumplimiento con el término reglamentario.

Atendidos los recursos dispositivos de ambas partes, el Oficial Examinador emitió *Orden* el 20 de julio de 2024.[6] En su dictamen, adjudicó la existencia de hechos medulares en controversia y, consecuentemente, ordenó la celebración de una vista adjudicativa.

---

[3] *Íd*, Entrada Núm. 4, Anejo 2 - Orden de 12 de marzo de 2024.
[4] *Íd.,* Entrada Núm. 4, Anejo 3 - Moción de Desestimación.
[5] *Íd.,* Entrada Núm. 4, Anejo 5 – Contestación Moción de Desestimación - Promovente 26.mayo.2024.
[6] *Íd.,* Entrada Núm. 4, Anejo 6 – Orden 20.julio.2024.

Superados varios asuntos procesales, el 17 de octubre de 2024 celebró la vista administrativa.

El 13 de febrero de 2026 el Oficial Examinador emitió un informe en el que recomendó la desestimación y archivo de la Revisión Administrativa. [7] Acogido el informe, el Departamento de la Vivienda emitió *Resolución Final y Orden,* el 16 de marzo de 2026. En consecuencia, declaró No Ha Lugar el recurso instado por la recurrente y ordenó su archivo con perjuicio.

Aun inconforme, el 14 de abril de 2026 la Sra. Prieto Rivera instó de forma *pro se* un recurso de revisión judicial y le imputó al foro administrativo la comisión de los siguientes errores:

1. **APLICACIÓN RÍGIDA SIN ANÁLISIS CASO A CASO.**
2. **FALTA DE CONSIDERACIÓN DE CIRCUNSTANCIAS HUMANITARIAS.**
3. **DILACIÓN EXCESIVA.**
4. **DETERMINACIÓN ARBITRARIA.**

Autorizada la comparecencia *in forma pauperis* de la Sra. Prieto Rivera, ordenamos al Departamento de la Vivienda a remitir copia certificada de la totalidad del expediente administrativo.

En cumplimiento, el 23 de abril de 2026 la parte recurrida presentó la copia certificada del expediente administrativo. Por su parte, el 12 de mayo de 2026 radicó un *Alegato en oposición a recurso de revisión judicial.*

Contando con el expediente ante nos, al igual que el beneficio de la comparecencia de ambas partes, procedemos a disponer del presente recurso, no sin antes delimitar la normativa jurídica aplicable.

---

[7] *Íd.,* Entrada Núm. 4, Anejo 22 – Recomendación por el Oficial Examinador.

## II.

### A.

El Artículo 4.006 (c) de la *"Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003"*, Ley Núm. 201 del 22 de agosto de 2003, según enmendada, 4 LPRA sec. 24y, faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. En el ejercicio de su facultad, los tribunales apelativos están obligados a concederles deferencia a las decisiones administrativas, pues estas poseen la experiencia y el conocimiento especializado respecto a los asuntos que se les han delegado a las agencias. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33; *Torres Rivera v. Policía de PR*, 196 DPR 606, 627 (2016). De este modo, todas las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo que la parte que las impugne debe producir suficiente evidencia para derrotarlas. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra*; *Trigo Margarida v. Junta Directores*, 187 DPR 384, 393-394 (2012).

Cónsono con lo anterior, al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra*; *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 115 (2023). Al aplicar este criterio, los foros revisores deben resolver si la determinación de la agencia, en la interpretación de los reglamentos y las leyes, es razonable. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra*; *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 616 (2006). Es decir, la revisión judicial procede si la agencia administrativa actuó arbitraria o ilegalmente, o de una forma tan irrazonable que en su actuación abusó de su discreción. *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR, supra*, pág.

626. De igual modo, al revisar las determinaciones de hechos, los tribunales solo pueden sustituir su criterio por el de la agencia cuando las determinaciones no están fundamentadas en evidencia sustancial. *Hernández Feliciano v. Mun. Quebradillas*, *supra*, págs. 114-115. La evidencia sustancial es " 'aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión' ". *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 266 (2007) (*citando a Hernández, Álvarez v. Centro Unido*, *supra*, pág. 615). La parte que impugne una determinación "tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial". *Otero v. Toyota*, 163 DPR 716, 728 (2005).

Por otro lado, y por lo general, las agencias son las primeras intérpretes de las leyes que rigen el ejercicio de su ministerio. *Buxó Santiago v. Estado Libre Asociado de Puerto Rico*, 2024 TSPR 130. Sin embargo, los tribunales son el ente con el poder de interpretar las leyes y la constitución. *OEG v. Rodríguez y otros*, 159 DPR 98, 124 (2003). Cónsono con lo anterior, el Artículo 4.5 de la *"Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"*, Ley Núm. 38 del 30 de junio de 2017, según enmendada, 3 LPRA sec. 9675, dispone que las conclusiones de derecho "serán revisables en todos sus aspectos por el tribunal". Así, la interpretación de la agencia administrativa "no prevalecerá cuando produzca resultados incompatibles o contrarios al propósito del estatuto interpretado y a su política pública". *Otero Rivera v. Bella Retail Group, Inc.*, 214 DPR 473, 485 (2024) (Énfasis suplido en el original eliminado).

**B.**

El Gobierno de Estado Unidos de América aprobó fondos económicos para el programa "Community Development Block Grant disaster recovery" (CDBG-DR) en aras de asistir a la

recuperación a largo plazo de los desastres causados por los huracanes Irma y María. En atención a ello, el Departamento de la Vivienda y Desarrollo Urbano de los Estado Unidos (HUD), como administrador de los fondos federales, le asignó al Estado Libre Asociado de Puerto Rico (ELA) una partida a eso fines. Posteriormente, el ELA distribuyó ciertas partidas a diferentes agencias administrativas con el fin de producir propuestas para la aprobación del administrador federal. Federal Register, Vol. 83, Núm. 28, 9 de febrero de 2018.

Conforme lo anterior, HUD facultó a los recipientes de dichas subvenciones, como lo es el Departamento de la Vivienda, a describir y detallar un Plan de Acción sobre el uso de los fondos. El mencionado plan requiere incluir el criterio de elegibilidad, el uso de los fondos a largo plazo, la restauración de la infraestructura y vivienda y la rehabilitación de las áreas impactadas por los desastres naturales. Una vez aprobado el Plan de Acción, requirió promulgar políticas y procedimientos en cumplimiento con las disposiciones y criterios federales, para la operación de los programas. *Íd.*

Como parte del Plan de Acción, el Departamento de la Vivienda, como recipiente de los fondos, designó a la Autoridad para el Financiamiento de la Vivienda de Puerto Rico (AFV) como el subrecipiente para administrar el Programa de Asistencia Directa al Comprador (Programa). El objetivo del Programa es asistir al mayor número de familias elegibles con la adquisición de una vivienda segura y asequible en aras de contribuir a la sostenibilidad de las comunidades en Puerto Rico. Guías del Programa de Asistencia Directa al Comprador, Sección 1, pág. 8.

El 7 de mayo de 2025 el Departamento de la Vivienda publicó su última versión de las Guías del Programa de Asistencia Directa al Comprador (Guías del Programa). En lo pertinente a la

controversia del caso de autos, como parte de los criterios de elegibilidad el solicitante debe cumplir con la definición de "comprador de vivienda elegible". Sobre ello, la mencionada guía reza como sigue:

> Los miembros de un hogar con ingresos LMI o de Necesidad Urgente; un individuo o, en el caso de las parejas casadas, un individuo y su cónyuge que no son dueños de una propiedad residencial cuando solicitan la asistencia del Programa; el hogar debe calificar para la hipoteca. Esto incluye a un padre o madre soltero(a) que, solo han sido propietarios de una vivienda con su excónyuge mientras estuvieron casados. Personas que son amas de casa desplazadas y que sólo han sido propietarias con su cónyuge. Guías del Programa, *supra*, Sección 2, pág.11.

En consonancia con lo antes dispuesto, las Guías definen el término "miembro de un hogar" como sigue:

> **Toda persona que ocupa la misma unidad de vivienda, independientemente de su parentesco**. Puede incluir a los niños menores de edad, familiares que están ausentes temporeramente y familiares que están ausentes (como los que residen en un hogar de ancianos). *Para propósitos de elegibilidad del Programa HBA*, **los miembros del hogar no pueden ser propietarios de una vivienda**. La determinación, por parte de AFV, se hará caso a caso. (Énfasis nuestro). *Íd.,* pág 14.

Como secuela a la definición de "comprador de vivienda elegible", las Guías añaden a la definición las consideraciones civiles del solicitante, como lo son los padres solteros carentes de vivienda principal. Del mismo, dicta condiciones menos restrictivas en el trámite de elegibilidad para las víctimas de violencia doméstica. Guías del Programa, *supra*, Sección 6.1, pág. 24.

En cuanto al alcance de las respectivas guías, la Sección 20.1 dispone que las mismas no deben tomarse como instrucciones exhaustivas, empero sirven para asistir y orientar en torno a las actividades de implementación y culminación del programa. Además, añade las facultades discrecionales para la concesión de los beneficios que ostenta el Departamento de la Vivienda. En referencia a ello dispone lo siguiente:

[…] Vivienda se reserva la facultad de autorizar, a su discreción, la concesión de los beneficios del Programa a cualquier Solicitante, solo cuando circunstancias excepcionales, no contempladas en estas guías, así lo justifiquen. Esta facultad se llevará a cabo caso a caso, de conformidad con los requerimientos federales, estatales y locales. Vivienda no está obligado a garantizar los beneficios de Programa en estos casos.

Guías del Programa, *supra*, Sección 20.1, pág. 69.

### C.

A tenor con nuestro ordenamiento constitucional, ninguna persona puede ser privada de su propiedad sin un debido proceso de ley. Artículo II, Sección 7, Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1. El debido proceso de ley se manifiesta en dos dimensiones; a saber, la sustantiva y la procesal. *PVH Motor v. ASG*, 209 DPR 122, 130–131 (2022). En su esfera sustantiva, el Estado está impedido de aprobar estatutos o realizar actos que afecten irrazonable, arbitraria o caprichosamente los intereses de propiedad o libertad de las personas. *Hernández v. Secretario*, 164 DPR 390, 394-395 (2005).

Por otro lado, bajo su vertiente procesal, el debido proceso de ley impone al Estado la obligación de garantizar a los individuos que cualquier interferencia con sus intereses de libertad o propiedad se harán por medio de un proceso justo y equitativo. *Calderón Otero v. C.F.S.E.*, 181 DPR 386, 398 (2011); *Pueblo v. Montero Luciano*, 169 DPR 360, 371 (2006). Es decir, para que entre en vigor la protección que ofrece este derecho debe estar en juego un interés individual de libertad o propiedad. *Rivera Rodríguez & Co. v. Stowell Taylor*, 133 DPR 881, 887 (1993). Una vez se cumple esta exigencia, procede determinar cuál es el procedimiento exigido. *Rivera Rodríguez & Co. v. Stowell Taylor, supra*, pág. 887.

Como consecuencia de este mandato constitucional, los procesos adjudicativos deben observar una serie de garantías

mínimas; a saber, "(1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el récord". *St. James Sec. v. AEE,* 213 DPR 366, 395-396 (2023).

Para determinar si un procedimiento administrativo de tipo adjudicativo cumple con los requisitos constitucionales del debido proceso de ley, hay que analizar los factores siguientes: el interés privado que puede resultar afectado por la actuación oficial; el riesgo de una determinación errónea debido al proceso utilizado y el valor probable de garantías adicionales o distintas; y el interés gubernamental protegido en la acción sumaria, inclusive los cargos fiscales y administrativos que conllevaría el imponer otras garantías procesales. *Báez Díaz v. ELA,* 179 DPR 605, 623 (2010).

**III.**

En el caso de marras, la recurrente nos solicita que revoquemos la *Resolución Final y Orden* emitida por el Departamento de la Vivienda mediante la cual reafirmó la inelegibilidad de la Sra. Prieto Rivera para participar del Programa de Asistencia Directa al Comprador.

Por estar íntimamente relacionados, abordaremos el primer y segundo señalamiento de error de manera conjunta. También discutiremos simultáneamente el tercer y cuarto error.

En suma, la recurrente sostiene que el Departamento de la Vivienda incidió al omitir un análisis individualizado en consideración con las circunstancias particulares del caso. Manifiesta, que el foro adjudicador debió considerar la función de cuidadora que ostenta para satisfacer las condiciones de salud que enfrenta su madre en aras de satisfacer los estatutos federales.

Del mismo modo, arguye que el Departamento de la Vivienda incurrió en error manifiesto al violentar el debido proceso de ley. En particular, asevera que la dilación propiciada por el foro administrativo para la adjudicación del recurso lesionó su oportunidad real de adquirir vivienda, debido a que la vendedora del bien inmueble falleció durante el proceso.

Por su parte, el Departamento de la Vivienda plantea que, en el caso de autos, el foro administrativo adjudicó su determinación a base de los requisitos impuestos en las Guías del Programa. Añadió, que las consideraciones exigidas por la recurrente son incompatibles con el fin ulterior del Programa. Particularmente, indica que las Guías del Programa no contemplan excepciones por razones humanitarias que requieran dejar sin efecto un requisito esencial como lo es que los miembros del hogar no sean titulares de una residencia.

Asimismo, reitera que la recurrente carece de base legal para sostener sus argumentos en relación con el alegado incumplimiento con el debido proceso de ley. Puntualiza que no demostró que las actuaciones del foro adjudicador son carentes de base racional. Por consiguiente, concluye que las meras alegaciones sobre el exceso de tiempo convenido para disponer de la revisión administrativa resultan insuficientes.

Tras un análisis cuidadoso y sosegado de la totalidad del expediente administrativo, adelantamos que el Departamento de la Vivienda actuó correctamente al sostener la determinación recurrida.

Conforme expusimos en el acápite anterior, el Programa de Asistencia Directa al Comprador es financiado a través de subvenciones federales con el fin de proveer asistencia directa a los solicitantes elegibles para la compra de una residencia principal. En atención a esos principios, las Guías del Programa enumeran los

usos y actividades elegibles para su obtención. En particular, la Sección 6.1 de la Guía del Programa decreta que cada solicitante cumpla con la siguiente definición de "Comprador de vivienda elegible":

> Los miembros de un hogar con ingresos LMI o de Necesidad Urgente; un individuo o, en el caso de las parejas casadas, un individuo y su cónyuge que no son dueños de una propiedad residencial cuando solicitan la asistencia del Programa; el hogar debe calificar para la hipoteca. Esto incluye a un padre o madre soltero(a) que, solo han sido propietarios de una vivienda con su excónyuge mientras estuvieron casados. Personas que son amas de casa desplazadas y que sólo han sido propietarias con su cónyuge.

Sin embargo, la referida definición dispone contemplarse análogamente con la descripción de "miembro del hogar" la cual incluye a "toda persona que ocupa la misma unidad de vivienda". Cónsono con ello, puntualiza que "[p]ara propósitos de elegibilidad del Programa HBA, los miembros del hogar no pueden ser propietarios de una vivienda".

Por otra parte, la Sección 20.1 de la contemplada promulgación atiende la facultad del Departamento de la Vivienda para autorizar asistencia financiera en circunstancias excepcionales. Sobre ello, dispone que solamente se adjudicará a discreción del Departamento de la Vivienda y en atención a circunstancias no contemplados en las guías. Asimismo, estima que la agencia administrativa no viene obligada a garantizar los beneficios del programa aun cuando se invoquen circunstancias excepcionales.

De entrada, es un hecho incontrovertido que, para efectos de solicitud del Programa, la recurrente incluyó a la Sra. Rivera Rivera como miembro de su composición familiar. Nótese, además, que la Sra. Rivera Rivera era a su vez propietaria del bien inmueble que se pretendía subvencionar con los fondos del Programa. Es decir, coetáneo a la solicitud instada por la recurrente, un miembro del

hogar fungía como titular de una propiedad, condición expresamente prohibida bajo el palio de las Guías del Programa. Habida cuenta del cuadro fáctico, la recurrente requirió un cambio en su composición familiar. Empero, no cumplió con las indicaciones documentales solicitadas por la parte recurrida, en aras de evidenciar dicho canje. Por consiguiente, el Departamento de la Vivienda adjudicó a base de los documentos provistos por la recurrente.

Ahora, contrario a lo expuesto por la recurrente, en el caso de epígrafe la mencionada guía no suple marco de flexibilidad para excluir un requisito fundamental de elegibilidad cuando un solicitante es a su vez cuidador. Distinto a ello, el Programa valida estándares menos onerosos únicamente en solicitudes de víctimas de violencia doméstica. En ese sentido, las Guías del Programa promulgan excepciones específicas y limitadas dirigidas a satisfacer los objetivos del Programa.

Como corolario de lo anterior, la reglamentación surte libre de ambigüedades en cuanto a las condiciones de los miembros del hogar. En particular, prohíbe la posesión de un bien residencial a cualquier persona que ocupa la misma unidad de vivienda a ser subvencionada. Resolver lo contrario implicaría ampliar indiscriminadamente los objetivos y principios acogidos en el Plan de Acción, según aprobado para la distribución de los fondos.

A la luz de lo anterior, el Departamento de la Vivienda evaluó la solicitud de la recurrente en atención a la totalidad del expediente administrativo y bajo la aplicación taxativa de las Guías del Programa. Por consiguiente, el foro administrativo no abusó de su discreción al sostener la determinación de inelegibilidad en el caso de autos. Así, el Departamento de la Vivienda no incurrió en el primer y segundo señalamiento de error.

Por último, en su tercer y cuarto señalamiento, la recurrente sostuvo que el ente administrativo actuó arbitraria y caprichosamente al emitir la determinación recurrida de forma tardía y coartarle su derecho propietario a una vivienda. Tampoco le asiste razón.

Es harto conocido que, debido a que las agencias administrativas bajo sus funciones interfieren con los intereses de libertad y propiedad de las personas, las garantías del debido proceso de ley son aplicables a sus procesos. Con el propósito de determinar si un procedimiento administrativo de tipo adjudicativo cumple con los requisitos constitucionales del debido proceso de la ley, requerimos del análisis de los siguientes factores: el interés privado que puede resultar afectado por la actuación oficial; el riesgo de una determinación errónea debido al proceso utilizado y el valor probable de garantías adicionales o distintas; y el interés gubernamental protegido. *Báez Díaz v. ELA,* supra.

Del expediente del caso se desprende que, el 17 de octubre de 2024, la recurrente gozó de amplia oportunidad para presentar documentos; contrainterrogar testigos y examinar evidencia en su contra durante la vista adjudicativa. Sometido el caso, el 5 de mayo de 2026, mediante *Orden*, el Oficial Examinador denegó la introducción de evidencia adicional a los efectos de hacer constar el fallecimiento de la Sra. Rivera Rivera. En vista de ello, el 13 de febrero de 2026 el Oficial Examinador notificó su informe de recomendación y, subsiguientemente, el Departamento de la Vivienda emitió su dictamen el 17 de marzo de 2026.

Ciertamente, el procedimiento adjudicativo sufrió dilaciones para su determinación. No obstante, del expediente ante nuestra consideración no surge actuación alguna que haya menoscabado las garantías mínimas del debido proceso de ley en su vertiente procesal. Por el contrario, se desprende que a la recurrente se le

brindó amplia oportunidad para ser escuchada, presentar evidencia, contrainterrogar testigos y exponer plenamente sus planteamientos y defensas antes de la determinación final del foro adjudicador.

Asimismo, conforme discutido previamente, la determinación de inelegibilidad de la Sra. Prieto Rivera para participar del Programa emana de la totalidad del expediente administrativo y del incumplimiento con los requisitos mandatorios establecidos para acceder a los fondos federales objeto de controversia. En consecuencia, la recurrente no ostenta un derecho propietario sobre dichos beneficios, particularmente ante la ausencia de cumplimiento con los criterios de elegibilidad exigidos por el Programa.

De igual forma, la determinación recurrida no tuvo el efecto de privar a la recurrente de su facultad de adquirir o procurar una residencia por otros medios disponibles. Así pues, aun cuando la recurrente contaba con las garantías procesales inherentes a un procedimiento adjudicativo justo, ello no se traduce en un derecho adquirido a la concesión de una subvención federal para la cual fue válidamente determinada inelegible. En ese sentido, no se configura violación alguna a un interés propietario protegido, toda vez que el acceso a dichos fondos se encuentra supeditado al estricto cumplimiento de los requisitos reglamentarios aplicables.

Por tal razón el foro adjudicador tampoco cometió el tercer y cuarto señalamiento de error.

**IV.**

Por las razones discutidas anteriormente, confirmamos la *Resolución Final y Orden* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones